UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AN TUONG VU,<br><br>     Petitioner,<br><br>v.<br><br>TODD LYONS, et al.,<br><br>     Respondents. | Case No. 5:26-cv-02930-KES<br><br>ORDER GRANTING THE PETITION IN PART AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I.    INTRODUCTION

An Tuong Vu ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 9.)  The Petition is granted in part, and Respondents are directed to immediately release him from custody.

## II.    PROCEDURAL HISTORY

On May 29, 2026, Petitioner filed the Petition (Dkt. 1) and an ex parte application for a temporary restraining order ("TRO Application" at Dkt. 3).  The

TRO Application was supported by a sworn declaration from Petitioner's attorney, Marcelo Avendano ("Avendano Decl." at Dkt. 3-1) and several other exhibits (Dkt. 3-2, 3-3).  The Petition and TRO Application raised the following claims:

Ground 1: "Unlawful Detention": "Petitioner's continued detention resulting directly from a constitutionally and legally deficient bond hearing, constitutes unlawful restraint of liberty cognizable under 28 U.S.C. § 2241."  (Pet. at 7.)

Ground 2: "Irreparable Harm": "Every day of continued unlawful detention constitutes irreparable harm, particularly he is being separated from his family and his community.  Irreparable harm also exists because Petitioner's detention prevents him from diligently pursuing lawful status of which he is statutorily eligible."  (Pet. at 7.)

Ground 3: "Re detention violates due process": "Petitioner's re-detention violates the Due Process Clause because ICE took him back into custody on 04/17/2026 at a scheduled ICE check-in, after he had lived in the community under ICE supervision since approximately 2003 and had complied with reporting requirements."  (Pet. at 7.)  He argues that his re-detention, "after years of supervised release, violated due process because it occurred without constitutionally adequate individualized procedures," and "due process generally requires a hearing before the government deprives a person of liberty."  (TRO App. at 12-13.)

The Petition asks the Court to order: (a) his "immediate release from ICE custody"; (b) "that Respondents may not re-detain Petitioner or impose additional conditions such as bond or electronic monitoring unless they can assure that a neutral decision-maker can determine at a hearing that such conditions are necessary"; and (c) that Respondents are enjoined "from transferring Petitioner out of the Jurisdiction of this Court District."  (Pet. at 8 ¶ 15.)

On June 1, 2026, the Court denied the TRO Application, finding that Petitioner had not demonstrated imminent, irreparable harm that could not be

2

addressed by the expedited briefing schedule set by General Order 26-05.  (Dkt. 8.)

Respondents answered the Petition on June 5, 2026.  ("Answer" at Dkt. 11.)  The Answer is supported by a declaration from Dade Gomes, an ICE Deportation Officer (Dkt. 11-1) and attached exhibits (Dkt. 11-2 through 11-4).

Petitioner replied on June 8, 2026 ("Reply" at Dkt. 12), attaching a supporting declaration from Petitioner's immigration counsel, Kiran Nair (Dkt. 12-1) and other exhibits.

## III.    FACTUAL RECORD

### A.    Parole into the U.S. (1993).

Petitioner is a citizen of Vietnam who has resided in the U.S. since March 2, 1993, when he entered pursuant to public-interest parole under Immigration and Nationality Act ("INA") § 212(d)(5).  (Avendano Decl. ¶ 1 / Dkt. 3-1 at 2; Gomez Decl. ¶ 4 / Dkt. 11-1 at 1.)  He entered the U.S. as a minor with his parents and siblings, and he was paroled under the Orderly Departure Program and Public Interest Parole Program.  (Nair Decl. ¶ 5 / Dkt. 12-1 at 1.)

### B.    Conviction and Removal Order (2001-2003).

In or around 2001, Petitioner was convicted of assault with a deadly weapon other than a firearm under California Penal Code § 245(a)(1).  (Avendano Decl. ¶ 7 / Dkt. 3-1 at 4; Nair Decl. ¶¶ 5-6 / Dkt. 12-1 at 2-3; Gomez Decl. ¶ 5 / Dkt. 11-1 at 1.)[1]  He was sentenced to 364 days in jail.  (Nair Decl. ¶ 5 / Dkt. 12-1 at 2; Gomez

---

[1] The parties agree that Petitioner was convicted under California Penal Code § 245(a)(1).  Officer Gomez's declaration states the conviction was for "Assault with Force Likely to Produce Great Bodily Injury…."  (Gomez Decl. ¶ 5 / Dkt. 11-1 at 1.)  However, subsection (a)(1) of the cited Penal Code provision deals with "assault upon the person of another with a deadly weapon or instrument other than a firearm," whereas assault "by any means of force likely to produce great bodily injury" is covered in subsection (a)(4).  See Cal. Pen. Code § 245(a)(1), (4).  Thus, Petitioner appears to be more accurately describing his conviction.  Neither party has provided any facts about the underlying offense or documents from the state criminal court.

Decl. ¶ 5 / Dkt. 11-1 at 1.)

On October 22, 2002, Petitioner was served with a notice to appear ("NTA") initiating removal proceedings against him.  (Gomez Decl. ¶ 6 / Dkt. 11-1 at 1.)

According to Petitioner's immigration attorney, Petitioner "sought to adjust status … under section 586 of Public Law 106-429 and 8 C.F.R. § 245.21(a)," but "that application was denied by the former Immigration and Naturalization Service (INS) on July 9, 2003, because it held that [Petitioner's] 2001 conviction … constituted a crime involving moral turpitude under INA § 212(a)(2)(A)(i)(I)." (Nair Decl. ¶ 5 / Dkt. 12-1 at 2.)  INS "held that [Petitioner] had not sought a waiver of the bar to admission and was therefore inadmissible and ineligible to adjust status at that time."  (Nair Decl. ¶ 5 / Dkt. 12-1 at 2.)

On August 14, 2003, an immigration judge ("IJ") ordered Petitioner removed to Vietnam.  (Gomez Decl. Ex. A / Dkt. 11-2 (removal order).)  Petitioner did not appeal the removal order to the Board of Immigration Appeals ("BIA"). See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 073-291-939, last accessed June 10, 2026).

C.    **Release on Order of Supervision ("OSUP") and Application for Adjustment of Status (December 2003-April 2026).**

About four months later, on December 15, 2003, Petitioner was released on an OSUP.  (Gomez Decl. ¶ 8 / Dkt. 11-1 at 2; Avendano Decl. ¶ 3 / Dkt. 3-1 at 2.) According to Petitioner's counsel, Petitioner complied with all ICE reporting requirements and has had no criminal incidents since his 2001 conviction. (Avendano Decl. ¶ 3 / Dkt. 3-1 at 2.)  Officer Gomez states that in 2012, Petitioner was convicted of placing pollutants near State waters in violation of California Fish and Game Code § 5652 and fined.  (Gomez Decl. ¶ 5 / Dkt. 11-1 at 1.)  ICE did not take Petitioner into custody at that time, and Respondents do not currently assert that the 2012 conviction violated the terms of Petitioner's OSUP.  (See

Answer at 2 (arguing Petitioner's OSUP was revoked because of the likelihood of removal to Vietnam).)

On June 13, 2015, Petitioner married a U.S. citizen.  (Avendano Decl. ¶ 6 / Dkt. 3-1 at 4.)  He has three U.S.-citizen children, and his mother is a U.S. citizen.  (Avendano Decl. ¶ 6 / Dkt. 3-1 at 4.)  He has lived at the same Bakersfield address and worked at the same nail salon since approximately 2020.  (Avendano Decl. ¶ 2 / Dkt. 3-1 at 2.)

On March 17, 2026, ICE "re-issued … form I-220B (Order of Supervision) and placed him on GPS monitoring after reviewing his case."  (Gomez Decl. ¶ 9 / Dkt. 11-1 at 2; see also Avendano Decl. ¶ 3 / Dkt. 3-1 at 2 (stating Petitioner was placed on an ankle monitor in late March 2026).)

On or about May 4, 2026, Petitioner filed an adjustment-of-status application and sought related waiver relief, filing Forms I-485 and I-601.  (Avendano Decl. ¶ 3 / Dkt. 3-1 at 2.)  According to Petitioner's immigration attorney, he is eligible for such relief in part because his 2001 conviction was more than 15 years ago.  (Nair Decl. ¶ 6 / Dkt. 12-1 at 2-3.)

Those applications remain pending as of June 5, 2026.  (Avendano Decl. ¶ 3 / Dkt. 3-1 at 2.)  They require completion of "biometrics" and a medical examination.  (Avendano Decl. ¶ 3 / Dkt. 3-1 at 2.)

### D.    Re-Detention by ICE (April 2026).

On April 14 or 17, 2026,[2] Petitioner was detained by ICE during a scheduled check-in.  (Gomez Decl. ¶ 10 / Dkt. 11-1 at 2.)  According to Officer Gomez, ICE "served [Petitioner] a Notice of Revocation of Release and arrested [Petitioner] due

_____

[2] Petitioner's counsel declares that he was detained on April 17th (Avendano Decl. ¶ 3 / Dkt. 3-1 at 2), and Officer Gomez states that he was detained on April 14th (Gomez Decl. ¶ 10 / Dkt. 11-1 at 2.)  The revocation documents submitted by Officer Gomez appear to corroborate the April 14th date.  This dispute of fact does not appear to be material to Petitioner's claims.

to his final order and significant likelihood that Vietnam will issue a travel document for his removal." (Gomez Decl. ¶ 10 / Dkt. 11-1 at 2.) Officer Gomez's declaration attaches a copy of the Notice of Revocation of Release, which states in relevant part, "Your release has been revoked pursuant to 8 C.F.R. § 241.13(i), for the following reason(s): … Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future. … ICE is seeking a travel document to effect [sic] your expeditious removal to Vietnam." (Gomez Decl. Ex. C / Dkt. 11-4 at 1-2.)

On April 23, 2026, DHS submitted a request for a travel document to Vietnamese authorities. (Gomez Decl. ¶ 11 / Dkt. 11-1 at 2.) "On May 4, 2026, and again on May 18, 2026, requests for updates on the issuance of a [travel document] for [Petitioner] were submitted." (Gomez Decl. ¶ 12 / Dkt. 11-1 at 2.) "The request for travel document remains pending following an update request submitted by ERO [Enforcement and Removal Operations, a division of ICE] on May 31, 2026." (Gomez Decl. ¶ 13 / Dkt. 11-1 at 2.) Officer Gomez opines, "Vietnam is issuing [travel documents] with sufficient regularity, so it is very likely that a [travel document] for [Petitioner] will be issued soon." (Gomez Decl. ¶ 14 / Dkt. 11-1 at 2.)

Petitioner remains in detention in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 073-291-939, last accessed June 10, 2026).

Petitioner's immigration attorney, Kiran Nair, has been attempting to coordinate with ICE to allow Petitioner to complete the medical examination and biometrics for his adjustment-of-status application. (Dkt. 12-2 (emails between Ms. Nair and ICE officers).) On May 28, 2026, an Officer Gutierrez informed her, "USCIS will not accept biometrics from persons who are in detention unless it is for the purpose of a benefit filed with EOIR. In your client's case, your client has a final order of removal. There is no case pending with EOIR." (Id. at 2.) On

6

June 4, 2026, Officer Gomez informed her that ICE does not provide transportation for the required medical examination.  (Id. at 1.)  Ms. Nair states that she has "rescheduled biometrics to June 18, 2026, but I am not sure if USCIS will reschedule again, and failure to complete biometrics is grounds to deny the … application."  (Nair Decl. ¶ 4 / Dkt. 12-1 at 1.)

## IV.    DISCUSSION

### A.    Petitioner is Not Entitled to Relief on Ground 1.

Ground 1 of the Petition alleges, "Petitioner's continued detention, resulting directly from a constitutionally and legally deficient bond hearing, constitutes unlawful restraint of liberty cognizable under 28 U.S.C. § 2241."  (Pet. at 7.)  However, the record does not reflect that Petitioner was ever given a bond hearing in connection with his current detention.  Accordingly, Ground 1 shall be denied.

### B.    Petitioner is Not Entitled to Relief on Ground 2.

Ground 2 of the Petition alleges that Petitioner's detention is causing him "irreparable harm" because he is "separated from his family and his community," and because his "detention prevents him from diligently pursuing lawful status of which he is statutorily eligible."  (Pet. at 7.)  The existence of irreparable harm, in and of itself, does not demonstrate that Petitioner's confinement is illegal.  Accordingly, Ground 2 shall be denied.

### C.    Petitioner is Entitled to Release From Custody Based on His _Zadvydas_ Claim.

#### 1.    Parties' Arguments.

Respondents' Answer argues, "Petitioner cannot show that his removal is not significantly likely in the reasonably foreseeable future" under Zadvydas v. Davis, 533 U.S. 678 (2001).  (Answer at 2.)  Although it was not clear from the Petition that Petitioner intended to raise a prolonged-and-indefinite detention claim under Zadvydas, Petitioner's Reply does indeed argue that he is entitled to release from custody on this basis.  (See Reply at 6-9 ("Respondents' prediction about

7

Vietnam does not satisfy Zadvydas").)

Ordinarily, the Court does not allow petitioners to raise new grounds for relief in their reply. However, leave to amend must be liberally granted and would be appropriate here. See generally Fed. R. Civ. P. 15. Requiring Petitioner to file a First Amended Petition in this situation would be inefficient and meaningless, given that Respondents have already presented their arguments against Petitioner's Zadvydas claim. Given the lack of prejudice to Respondents, the irreparable harm alleged by Petitioner, and the Court's duty to ensure "the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court will consider this claim.

### 2.    Legal Standard.

"When a final order of removal has been entered against [a noncitizen[3]], the Government must facilitate that [noncitizen's] removal within a 90-day 'removal period.'" Thai v. Ashcroft, 366 F.3d 790, 793 (9th Cir. 2004) (citation omitted); 8 U.S.C. § 1231(a)(1)(A). Where removal cannot be accomplished within the removal period, continued detention is authorized by 8 U.S.C. § 1231(a)(6). Detention during this period is not mandatory. Section 1231(a)(6) "provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does not authorize the government to detain a noncitizen awaiting

---

[3] This order generally uses the term noncitizen rather than alien. See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations. Thus, noncitizen seems the better choice.").

removal "indefinitely" beyond the statutory 90-day removal period. 533 U.S. at 689. Rather, the Supreme Court construed the statute to contain an implicit "reasonable time" limitation. Id. at 682. The Court held that "the statute, read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." Id. at 682, 689. The Court determined that six months was a presumptively reasonable period of detention. Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. "For detention to remain reasonable, as the period or prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Following Zadvydas, DHS enacted 8 C.F.R. § 241.13 to comply with that ruling. That regulation provides:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

8 C.F.R. § 241.13(a). The regulation states that the noncitizen may be released on an OSUP if DHS finds that their "removal is not significantly likely in the reasonably foreseeable future…." 8 C.F.R. § 241.13(h)(1). Once they have been released on an OSUP, that OSUP may be revoked only if they violate the conditions of their release, see 8 C.F.R. § 241.13(i)(1), or if "on account of *changed circumstances*, [DHS] determines that there is a significant likelihood that

the [noncitizen] may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2) (emphasis added). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023)).

Many district courts have held that, once the noncitizen is released on an OSUP, based on a finding that they are unlikely to be removed, then when DHS seeks to revoke that OSUP, the *government* rather than the noncitizen bears the burden of demonstrating that "changed circumstances" now render the noncitizen's removal significant likely in the reasonably foreseeable future. See, e.g., Yan-Ling X. v. Lyons, No. 25-cv-01412, 2025 WL 3123793, at *3, 2025 U.S. Dist. LEXIS 220277, at *8 (E.D. Cal. Nov. 7, 2025) ("[T]he burden-shifting framework from Zadvydas does not apply" where the petitioner has already been "issued a final order of removal, detained, and subsequently released on an" OSUP, in part because "imposing the burden of proof on the [noncitizen] each time he is re-detained would lead to an unjust result and serious due process implications"); Nazarian v. Noem, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, 2025 U.S. Dist. LEXIS 229051, at *10-11 (C.D. Cal. Nov. 3, 2025) ("Contrary to Respondents' assertions, Petitioner is not challenging his detention during an initial removal period. … Rather, because Petitioner challenges his re-detention after already being released on an OSUP, 'ICE's own regulations [ ] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future.'"); El Abed v. Noem, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4, 2025 U.S. Dist. LEXIS 263943, at *11-12 (C.D. Cal. Oct. 28, 2025) ("Because there appears to be no dispute that Petitioner did not violate the conditions of release, Respondents have the burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable

10

future and have not done so.").

This is both logical and consistent with Zadvydas.  If a noncitizen was previously released on an OSUP under 8 C.F.R. § 241.13, then DHS had some reason to believe that, at that time, their removal was not significantly likely in the reasonably foreseeable future.  Those same reasons—as well as the passage of some amount of time while the noncitizen was out on an OSUP—generally would also serve to rebut the initial presumption in Zadvydas when the government seeks to revoke the OSUP.  At that point, the burden falls on DHS, both under Zadvydas and 8 C.F.R. § 241.13(i)(2), to show that something has changed that now renders removal likely.

### 3.     Analysis.

Respondents argue, first, that Petitioner's Zadvydas claim fails because he "has been detained for less than six months…."  (Answer at 4.)  The Court finds that this alone does not bar his claim.  Zadvydas recognized the six-month time frame to give "necessary Executive leeway" and "limit the occasions when courts will need to" address the issue.  533 U.S. at 700-01.  It referred to this time period as a "*presumptively* reasonable period of detention," implying that this presumption could be rebutted.  Id. at 701 (emphasis added).  Although the Ninth Circuit has not yet ruled on the issue, many district courts in this Circuit have held that a petitioner may attempt to rebut this presumption even before six months have elapsed.  See Trinh v. Homan, 466 F. Supp. 3d 1077, 1093 (C.D. Cal. 2020) ("Zadvydas established a 'guide' for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months.");  Tumasov v. Doe 1, No. 26-cv-590, 2026 WL 458146, at *2, 2026 U.S. Dist. LEXIS 33312, at *17-18 (S.D. Cal. Feb. 18, 2026) (collecting cases finding "that the six-month presumption in Zadvydas is rebuttable").  Otherwise, the government could "detain noncitizens ordered removed for up to six months even when their removal is impossible."  Tumasov, 2026 WL 458146, at *2, 2026 U.S.

Dist. LEXIS 33312, at *7 (quoting Zavvar v. Scott, No. 25-cv-2104, 2025 WL 2592543, at *5, 2025 U.S. Dist. LEXIS 175897, at *18 (D. Md. Sept. 8, 2025)). Allowing a detainee to bring such a claim before six months has elapsed is particularly appropriate in Petitioner's situation, where the government itself previously found removal unlikely and released Petitioner on an OSUP.

Respondents' briefing also incorrectly places the burden of proof on Petitioner to prove that his removal to Vietnam is not likely in the foreseeable future. (Answer at 4.) In December 2003, Petitioner was released and placed on an OSUP based on a finding that there was no significant likelihood of his removal to Vietnam in the reasonably foreseeable future. More than 20 years passed. Respondents do not contend that Petitioner violated the terms of his OSUP during that time. The Court therefore finds that, to justify the current OSUP revocation and detention, the burden is on *Respondents* to show that changed circumstances now render Petitioner's removal significantly likely in the reasonably foreseeable future.

Respondents argue that ICE submitted a request for a travel document for Petitioner on April 23, 2026—about two weeks *after* he was detained—and that "Vietnam has been issuing such travel documents with regularity." (Answer at 5 (citing Gomez Decl. ¶¶ 11, 14).) Respondents cite fact-finding the district court made in Trinh v. Homan, 466 F. Supp. 3d 1077 (C.D. Cal. 2020), wherein the district court found:

> The parties now agree that Vietnam does not maintain a blanket policy of refusing to repatriate pre-1995 immigrants. Instead, Vietnam now considers each request from ICE on a case-by-case basis. ICE frequently requests travel documents from Vietnam for pre-1995 immigrants, and Vietnam issues them in a non-negligible portion of cases.

Trinh, 466 F. Supp. 3d at 1090 (record citations omitted); (see Answer at 5). In the

12

same decision, however, the court declined to issue class-wide relief under Zadvydas for pre-1995 Vietnamese immigrants due to "the individualized inquires involved in each class members' Zadvydas claim…." Id. at 1091-92.  The court noted that "although many class members may be able to show that there is 'good reason to believe' their removal is unlikely, others will not." Id. at 1092.  Thus, this decision actually underscores the need for Respondents to produce some evidence that is specific to Petitioner himself.

Other district courts have granted habeas relief to Vietnamese detainees on similar records.  See, e.g., Luu v. Bowen, No. 25-cv-03145-MEMF-SP, 2025 WL 3552298, at *7, 2025 U.S. Dist. LEXIS 257061, at *19 (C.D. Cal. Dec. 11, 2025) ("Respondents' reliance on three instances of an individual being removed to Vietnam is not persuasive to show that Luu himself faces a 'significant likelihood of removal in the reasonably foreseeable future.' … Even if the Government can establish that Luu is removable under the 2020 MOU [Memorandum of Understanding], Vietnam has total discretion whether to accept particular non-citizens so the 2020 MOU is insufficient on its own to show a significant likelihood of removal."); Quan v. Bowen, No. 25-cv-02546-HDV-PVC, 2025 WL 3691858, at *5, 2025 U.S. Dist. LEXIS 263964, at *13 (C.D. Cal. Nov. 14, 2025) ("[T]he government provides no specific statistics regarding how often it is requesting—and how often it is receiving—travel documents from Vietnam in recent days for noncitizens who, like Petitioner, arrived in the United States before 1995. … Indeed, at oral argument, counsel for the government admitted that 'we just don't know one way or another at this point' whether Petitioner is likely to be removed in the reasonably foreseeable future."); Hoac v. Becerra, No. 25-cv-01740, 2025 WL 1993771, at *4, 2025 U.S. Dist. LEXIS 136002, at *10 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future. … Likewise, Respondents rely on the '2020 treaty of

13

memorandum of understanding' to support their assertion of changed circumstances but have not provided the document for the court's consideration. In Van Nguyen [v. Hyde, 788 F. Supp. 3d 144 (D. Mass. 2025)], the district court found that a 2020 Memorandum of Understanding, establishing a process of review and issuance of travel documents for Vietnamese citizens ordered removed, alone, was not enough to show that a changed circumstance had occurred."); see also Pham v. Warden, No. 26-cv-793-FMO-KES, 2026 U.S. Dist. LEXIS 59250 (C.D. Cal. Mar. 19, 2026).

Petitioner is therefore entitled to relief on his Zadvydas claim.  The Court will grant this claim and order Petitioner's immediate release from custody.

In addition to release from custody, the Petition also seeks prospective injunctive release based on Respondents' failure to provide him with a pre-deprivation hearing before a neutral adjudicator.  Accordingly, the Court will also consider whether he is entitled to such relief under Ground 3 of the Petition.

**D.      Petitioner is Entitled to Release and Prospective Injunctive Relief Based on Ground 3, His Due Process Claim.**

**1.      Parties' Arguments.**

Ground 3 of the Petition alleges that Petitioner's re-detention violated due process because "he had lived in the community under ICE supervision since approximately 2003 and had complied with reporting requirements."  (Pet. at 7.) Based on Petitioner's TRO Application, the Court construes this claim as arguing that, under the Fifth Amendment Due Process Clause, Petitioner was entitled to a bond hearing before an immigration judge prior to being re-detained.  (See TRO App. at 12-13 (arguing that his re-detention, "after years of supervised release, violated due process because it occurred without constitutionally adequate individualized procedures," and "due process generally requires a hearing before the government deprives a person of liberty").)

Respondents' Answer argues, "[R]evocation of Petitioner's [OSUP] based

14

on the significant likelihood that Vietnam will soon issue a travel document for his removal was not unlawful.  Petitioner received notice of the revocation of his release as well as an informal interview providing him an opportunity to respond to the reasons for the revocation." (Answer at 2.)  Although the Answer does not specifically address Petitioner's due process claim, the Court interprets the Answer as asserting that the regulatory notice and interview were sufficient to satisfy due process.

Petitioner responds that "regulatory compliance is not the same thing as constitutional adequacy." (Reply at 5.)  He argues that failing to provide him with a pre-deprivation hearing deprived him "of any meaningful opportunity to review the allegations against him, gather supporting evidence, consult with counsel, prepare witnesses, or otherwise prepare a defense before being questioned and detained." (Reply at 4.)

**2.     Legal Standard.**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026).  To determine what procedural protections an individual is owed in the

15

event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest.  Mathews, 424 U.S. at 335.

### 3.   Analysis.

a.   Liberty interest and private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690.  To determine whether a specific conditional release rises to the level of a protected liberty interest, '[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)].'"  Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010)).

In Morrissey, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly

16

"inflicts a grievous loss on the parolee." Id. (quotations omitted).

Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Omer G. G., 2025 WL 3254999, at *5 (parallel citations omitted).

Here, Petitioner was released on an OSUP that ordered him to comply with specific conditions.  This OSUP created an implicit promise that his parole would be revoked only if he failed to live up to the parole conditions or his removal became significantly likely in the reasonably foreseeable future.  See, e.g., Martinez v. Noem, 821 F. Supp. 3d 1183, 1191 (C.D. Cal. 2026); Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025).  For over 20 years, Petitioner "relied on this promise to 'form the [ ] enduring attachments of normal life,' such as establishing a family" and a career.  Martinez, 821 F. Supp. 3d at 1191 (quoting Morrissey, 408 U.S. at 482).  Petitioner therefore had a liberty interest in remaining free from custody that is protected by the Due Process Clause, and the first Mathews factor weighs strongly in his favor.

b.      Risk of an erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker…." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94); Le v. Chesnut, No. 26-cv-01750, 2026 WL 809891, at *8 (E.D. Cal. Mar. 24, 2026) (finding Vietnamese immigrant who was re-detained by ICE after many years in the U.S. was entitled to a pre-deprivation hearing as a matter of due process).  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances justifying the OSUP

17

revocation, and it would give Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest and detention gives him a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard.

This facts of this case illustrate why such a safeguard would be meaningful. Respondents revoked Petitioner's OSUP on the grounds that his removal to Vietnam was significant likely in the reasonably foreseeable future, but at that time, ICE had not even applied for a travel document to Vietnam. As discussed above, Vietnamese policy regarding repatriation of Vietnamese nationals from the U.S. appears to be complex and fact-specific. There is also evidence that Petitioner has been actively pursuing relief from removal since May 2026. It is unclear whether ICE considered any of this evidence when they decided to re-detain Petitioner. See generally Yang v. Scott, No. 2:26-cv-00469, 2026 WL 632661, at *4 (W.D. Wash. Mar. 6, 2026) ("Respondents argue that the revocation of Yang's OSUP is justified because there is now *post-detention* evidence—the travel document obtained February 2, 2026—that demonstrates a significant likelihood of removal. But 'the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'' … Confidence is no substitute for process. It is process that determines whether confidence is justified.") (citation omitted). Requiring a pre-deprivation hearing before a neutral adjudicator would allow development of a meaningful factual record, decrease the risk of an erroneous deprivation, and provide a valuable procedural safeguard.

c.      Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v.

Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6  (C.D. Cal. Mar. 9, 2026).  Additionally, the burden of a pre-detention hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  In this Court's experience, Respondents are routinely able to comply with orders requiring that such hearings be held within seven days. Respondents have presented no evidence to the contrary.

d.      Appropriate remedy is release.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights.  Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.  Many courts have found that a post-detention bond hearing is insufficient in this context.  See Gudavasov, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights.  See, e.g., Fernandez v. Semaia, No. 25-cv-3412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909 (C.D. Cal. Jan. 13, 2026) (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence

19

at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention"). Based on the weight of this persuasive authority, the Court will enter both types of relief here. As noted above, Petitioner is also entitled to release based on his Zadvydas claim.

## V.   CONCLUSION

IT IS THEREFORE ORDERED that:

1.   The Petition is granted in part as to Ground 3 and the Zadvydas claim.

2.   The Petitioner is denied in part, as to Grounds 1 and 2.

3.   Respondents shall **immediately release** An Tuong Vu (A# 073-291-939) from custody.

4.   If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

5.   Respondents shall not re-detain Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that his physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[4]

DATED: June 11, 2026

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[4] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).